1

2

3          **UNITED STATES DISTRICT COURT**

4              **DISTRICT OF NEVADA**

5                    * * *

6  TRIUNFO, INC., F.K.A. CATALINA              Case Nos.
   GRAPHIC FILMS, INC.,                    2:18-cv-01913-RFB-DJA
7                                     2:19-cv-01164-RFB-EJY (transferred in &
          Plaintiff,                              consolidated)
8
       v.                                       **ORDER**
9
   GLOBAL GRAPHIC RESOURCES LLC. et.
10 al.,

11         Defendants.

12

13     **I.     INTRODUCTION**

14     Before the Court are Catalina's Motion to Remand to State Court (ECF No. 28), Global

15 Graphic Resources LLC's (GGR) Motion to Compel Arbitration (ECF Nos. 30, 39 in "01164"),

16 and Global Graphic Resources LLC's Motion to Stay (ECF Nos. 31, 40 in "01164").[1]

17     **II.    FACTUAL BACKGROUND**

18     The Court makes the following factual findings.

19     In November 2017, GGR, a sales and distribution company, and Catalina, a manufacturer,

20 effectuated a Sales Representative Agreement ("SRA") and a related Consulting Agreement that

21 gave GGR the exclusive right to sell Catalina's products in Minnesota, Iowa, North and South

22 Dakota, Wisconsin, Illinois, Indiana, Michigan, the greater St. Louis metropolitan statistical area,

23 and to two companies, for a term of five years. In March 2018, Nekoosa LV, LLC, acquired

24 Catalina, and according to GGR, Nekoosa refused to be bound by the SRA. On July 19, 2018,

25 GGR made a demand for arbitration under the Uniform Arbitration Act, Minnesota Statutes

26

27     _____

28     [1] 2:18-cv-01913-RFB-DJA and 2:19-cv-01164-RFB-EJY were consolidated. The same filings with different
   docket numbers exist in both cases. The response and reply to the Motion to Remand are only located in 2:18-cv-
   01913. The response and reply to the Motion to Compel Arbitration and Motion to Stay are only located in 2:19-cv-
   01164.

§§ 572B.05 and 572B.07. In its arbitration demand, GGR asserted claims for, *inter alia*, violation of the Minnesota Termination of Sales Representatives Act (MTSRA) and breach of contract. The arbitration demand noted that MTSRA § 325E.37, subdivision 7 voided and rendered unenforceable the Nevada choice-of-law provision contained in the SRA.

### III.   PROCEDURAL BACKGROUND

The Court incorporates the factual findings from its January 23, 2019 Order granting GGR's Motion to Stay (ECF No. 6) and denying Catalina's Motion to Remand (ECF No. 8) pending resolution of a related dispute filed in the U.S. District Court for the District of Minnesota. ECF No. 16.  On July 1, 2019, Judge Wright of the U.S. District Court for the District of Minnesota granted Catalina's motion to transfer to the U.S. District Court for the District of Nevada and declined to rule on GGR's motion to compel arbitration. ECF No. 17 in 2:18-cv-01913-RFB-DJA; ECF No. 24 in 2:19-cv-01164-RFB-EJY ("1164").

On October 10, 2019, the Court held a status conference and ordered that a renewed Motion to Remand and Renewed Motion to Compel were due November 11, 2019 with responses due November 25, 2019 and replies due December 2, 2019. ECF No. 24. At the status conference, the Court consolidated the two cases, and noted that the motion to remand and compel arbitration would be decided together. The stay in the case was lifted, and discovery was suspended until the Court decided the renewed motions. Id.

On November 11, 2019, Catalina filed a Motion for Remand to State Court. ECF No. 28. On November 22, 2019, GGR responded to the Motion to Remand. ECF No. 32. On December 2, 2019, Catalina replied to the Motion to Remand. ECF No. 33.

On November 12, 2019, GGR filed a Motion to Compel Arbitration and a Motion to Stay. ECF Nos. 30 and 31. On November 25, 2019, Catalina replied to the Motion to Compel (ECF No. 41 in "01164"), and on December 2, 2019, GGR responded. ECF No. 43 in "01164." On November 25, 2019, Catalina responded to the Motion to Stay (ECF No. 42 in "01164"), and on December 2, 2019, GGR responded. ECF No. 44 in "01164."

On November 3, 2020, the Court held a hearing on Catalina's Motion to Remand to State Court, GGR's Motion to Compel Arbitration, and GGR's Motion to Stay. ECF No. 36.

1

2

## IV.   LEGAL STANDARD

### A.  Remand

Under Brillhart v. Excess Ins. Co of America, 316 U.S. 491, 494-5 (1942), the Supreme Court found that a district court has the discretion to determine whether it has jurisdiction under the Federal Declaratory Judgment Act by considering factors such as avoiding needless determination of state law issues, discouraging litigants from filing declaratory actions as a means of forum shopping, and avoiding duplicative litigation. Additional factors include, "whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems. In addition, a district court might also consider the convenience of the parties, and the availability and relative convenience of other remedies." Gov't Employees Ins. Co. v. Dizol, 133 F.3d 1220, 1225 n.5 (9th Cir. 1998) (citing American States Ins. Co. v. Kearns, 15 F.3d 142, 145 (9th Cir. 1994)).

### B.  Choice-of-Law

In an action based on diversity jurisdiction, the court applies the choice-of-law principles of the forum state. Aqua-Marine Constructors, Inc. v. Banks, 110 F.3d 663, 670 (9th Cir. 1997). Nevada courts enforce contractual choice of law provisions if the jurisdiction set by the agreement has a substantial relationship with the transaction and the agreement is not contrary to Nevada public policy. Pentax Corp. v. Boyd, 904 P.2d 1024, 1026 (Nev. 1995). To determine whether a state possesses a substantial relationship with a contract, courts consider five factors: "(1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties." Consolidated Generator-Nev. Inc. v. Cummins Engine Co., Inc., 971 P.2d 1251, 1253-54 (Nev. 1998) (citations omitted).

### C.  Motion to Stay

Minnesota Statute § 572B.07, cmt f: "Motion to Compel or Stay Arbitration" provides that,

"If the court orders arbitration, the court shall on just terms stay any judicial proceeding that involves a claim subject to the arbitration. If a claim subject to the arbitration is severable, the court may sever it and limit the stay to that claim."

## V.   DISCUSSION

### A.  Motion for Remand

Catalina argues that the action should be remanded to the Eighth Judicial District Court, and that the <u>Brillhart</u> factors, such as avoiding needless determination of state law issues and avoiding duplicative litigation, weigh in favor of the Court exercising its discretion to decline jurisdiction of this case's declaratory relief claim. ECF No. 28; <u>Brillhart v. Excess Ins. Co. of America,</u> 316 U.S. 491 (1942); <u>Gov't Employees Ins. Co. v. Dizol,</u> 133 F.3d 1220, 1225 (9th Cir. 1998). Catalina argues that the dispute can be fully adjudicated before the state court because there is no compelling federal interest in the action since it rests on the application of Nevada contract law; remand is necessary to prevent GGR from forum shopping; and there is no risk of duplicative litigation. <u>Id.</u> at 4-5. Catalina further states that the Court's order to consolidate the two actions should not weigh against a decision to remand the action because state court judges are capable of interpreting state law and the parties' position regarding the MTSRA. <u>Id.</u> at 6.

GGR argues that the action should not be remanded to the Eighth Judicial District Court. ECF No. 32. GGR states that Catalina is judicially estopped from seeking remand of the consolidated action when earlier, it moved the transferred-in Minnesota action ("01164") from state court to federal court. <u>Id.</u> at 4. GGR argues that remand would cause further delay and inefficiency; <u>Brillhart</u> is not applicable because the case is no longer a stand-alone declaratory judgment action; remand could cause duplicative actions; and that Catalina's attempt to remand is a form of forum shopping. <u>Id.</u> at 4-8.

The Court denies Catalina's Motion for Remand and retains jurisdiction. The Court finds that such a holding would discourage forum shopping. This dispute has already been in front of multiple fora. GGR made a demand for arbitration pursuant to the MTSRA on July 19, 2018. Catalina filed a declaratory judgment action in the Eighth Judicial District Court of Nevada on August 10, 2018. GGR brought an action and filed a motion to compel arbitration in Hennepin

County District Court in Minnesota on August 17, 2018. Catalina removed the Minnesota state action to the U.S. District Court for the District of Minnesota on September 20, 2018. Catalina served GGR with the Nevada state action on September 23, 2018, and GGR removed the Nevada state action to this Court on October 4, 2018. On July 1, 2019, the District of Minnesota granted Catalina's motion to transfer the demand for arbitration to this Court. To promote judicial economy and efficiency, the Court consolidated the cases, and now retains jurisdiction of these actions. The Court also finds that there is sufficient compelling federal interest in the action to not grant remand. This case requires this Court to determine the interactions of issues relating to potentially competing state interests regarding the application of state law. In terms of determining the competing interests of different states and the application of their respective laws, this Court is a more appropriate forum than one of the states whose interests may be at stake. The Court therefore exercises its discretion to deny Catalina's Motion to Remand.

### B. Motion to Compel Arbitration

#### 1. Choice-of-Law

The parties chose Nevada law to govern their relationship in the SRA and the Consulting Agreement. ECF No. 1-1 in "00164." Paragraph 14 of the SRA and Paragraph 10.5 in the Consulting Agreement states, "This Agreement shall be governed by the laws of the State of Nevada, without regard for its conflict of laws rules. The parties hereby irrevocably submit to the exclusive jurisdiction of the courts of the State of Nevada and any United States District Court situated in the State of Nevada for the purpose of construing and enforcing this Agreement unless the parties otherwise agree in writing to another form of dispute resolution." Id. at 35, 40-41.

GGR argues that despite the SRA's Nevada choice-of-law clause, the Court should apply Minnesota law and thus, the MTSRA, because Nevada does not have a substantial relationship with the parties' transaction and doing otherwise violates the public policy expressed by the MTSRA. Catalina argues that Nevada bears a substantial relationship to the SRA, and that Minnesota's expression of public policy through the MTSRA does not preclude application of Nevada law. The Court analyzes the factors of substantial relationship and public policy to determine whether the Nevada choice-of-law clause in the SRA applies in this dispute.

1

### a.   Substantial Relationship

2      GGR argues that Nevada played a limited role in transactions about the SRA.  ECF Nos.

3  39, 43 in "01164." Discussions leading up to the negotiation of the SRA occurred in California,

4  which is where Catalina's executives are located, and where GGR's sole member, Mr. Hanzal,

5  resides. GGR further argues that the parties' negotiation of the SRA occurred in California and

6  Minnesota, and when the dispute first arose, the parties mediated in California. Then, when

7  Catalina terminated the SRA, it sent a letter from California by California counsel. GGRA further

8  states that Catalina's place of business is no longer in Nevada.

9      Catalina argues that while its place of business is no longer in Nevada, its parties expressly

10  chose Nevada to govern their relationship. ECF No. 41 in "01164." Further, Catalina is a Nevada

11  corporation and the SRA relates to products manufactured in and emanating from Nevada. Catalina

12  also states that the genesis of the negotiations for the SRA occurred when Mr. Hanzal of GGR

13  visited Nevada to explore working with Catalina.

14      The assigned, exclusive territory under the SRA for GGR to sell Catalina's products was

15  Minnesota, Iowa, North and South Dakota, Wisconsin, Illinois, Indiana, Michigan, and the greater

16  St. Louis metropolitan statistical area. ECF No. 39 at 2.

17

### b.   Public Policy

18      GGR argues that enforcing the SRA's choice-of-law clause that states Nevada law shall

19  govern the relationship is contrary to the public policy of Minnesota, an interested state in this

20  dispute. ECF Nos. 39 and 43 in "01164." GGR states that Minnesota's MTSRA has an express

21  interest in protecting its sales representatives, and Nevada does not have a comparable statute.

22  GGR argues that there are two bases to compel arbitration because (1) Catalina is subject to

23  mandatory arbitration under the MTSRA because Catalina seeks to terminate the SRA, which

24  requires "good cause" under subdivision 2(a) of the MTSRA; and (2) the MTSRA confers a non-

25  waivable right on GGR to choose arbitration. Minn. Stat. § 325E.37, subds. 2(a), 7. GGR argues

26  that Minnesota courts interpreted the Minn. Stat. § 325E.37, subds. 7 to mean that once a

27  contractual choice-of-law provision is found void and unenforceable, parties are subject to the

28  MTSRA. To that end, GGR argues that the SRA's Nevada choice-of-law provision is void and

- 5 -

1    unenforceable, and so the MTSRA applies.

2        Catalina argues that Minnesota's public policy is irrelevant because the law of the forum

3    state and the law that parties expressly chose in the SRA is Nevada. ECF No. 41 in "001164."

4    Catalina also argues that if the court were to weigh Minnesota public policy against that of Nevada,

5    Nevada law still applies because the arbitration of sales representative claims is not a Minnesota

6    fundamental policy because the MTSRA allows its sales representatives the choice between

7    arbitration and litigation, and the judicial forum was already chosen. Further, Catalina argues that

8    Nevada has its own fundamental public policy interests in enforcing its contract law and statutes,

9    like Nev. Rev. Stat. § 597.995, and protecting its citizens and manufacturers.

10       **c. Analysis**

11       The Court denies GGR's Motion to Compel Arbitration and finds that the SRA's choice-

12   of-law for Nevada law applies. Minnesota law, and thus the MTSRA, does not apply because

13   Nevada has a substantial relationship to the SRA transaction and Nevada has fundamental public

     policies at stake.

14           *1.   Nevada bears a substantial relationship to the transaction reflected*

15                 *by the SRA*

16       Nevada has a substantial relationship to the SRA transaction. Catalina is a Nevada

17   corporation; its products under the SRA were to be manufactured in and distributed from Nevada;

18   and the parties' relationship had its genesis in Nevada. Performance of the SRA was not limited to

19   or focused on Minnesota but spread across several other states. Negotiations and correspondence

20   about the SRA indicate that Minnesota did not have a focused relationship with the transaction

21   reflected by the SRA. For example, business discussions leading up the negotiation of the SRA

22   and the negotiation of the SRA occurred in California and Minnesota; this dispute was mediated

23   in California pursuant to the SRA; and Catalina executed the Agreement in California with a

24   Minnesota-based sales representative. The Court therefore finds that considering all factors,

     Nevada has a substantial relationship with the SRA transaction.

25           *2.   Minnesota public policy does not preclude application of Nevada*

26                 *law*

27       The Court finds that Nevada has fundamental public policy interests in enforcing its laws

28   and protecting its citizens in this dispute. The Court acknowledges that Minnesota has a public

     policy interest in protecting its sales representatives through the MTSRA but finds that Nevada

1    also has compelling public policy interests at stake. Nevada has an interest in enforcing its choice-

2    of-law clauses. GGR and Catalina expressly agreed to the application of Nevada law and to litigate

3    disputes in Nevada law in the SRA. Under the Restatement (Second) of Conflicts of Laws § 6, a

4    court follows a statutory directive from its own state on choice of law, and when there is no such

5    directive, factors include "the protection of justified expectations" and "certainty, predictability,

6    and uniformity of result." Choice-of-law rules "should seek to further harmonious relations

7    between states and to facilitate commercial intercourse between them." Id. at cmt. d. Completely

8    disregarding the Nevada choice-of-law clause in the SRA interferes with the needs of interstate

9    systems and the certainty, predictability, and uniformity of result. Moreover, it would run contrary

10    to the "justified expectations" of the parties at the time of contracting and to the "certainty" and

11    "predictability" of the agreement to allow one party to be able to unilaterally alter an agreed upon

     provision of their agreement.

12         Nevada also has expressed public policy about the arbitration of disputes between parties.

13    For example, Nev. Rev. Stat. § 597.995: "Limitations on agreements which include provision

14    requiring arbitration of disputes arising between parties" states, "…an agreement which includes

15    a provision which requires a person to submit to arbitration any dispute arising between the parties

16    to the agreement must include specific authorization for the provision which indicates that the

17    person has affirmatively agreed to the provision." Here, GGR is correct in arguing that this statute

18    only applies to agreements containing an arbitration clause, which the SRA does not have. GGR

19    states that, rather, it is GGR's right to arbitrate the termination of the SRA as granted by the Minn.

20    Stat. § 325E.37, subd. 5(a). GGR also states that statutorily compelled arbitration is permitted in

21    Nevada. See, e.g., Nev. Rev. Stat. § 338.150(1). Finally, GGR argues that Catalina's claim that

22    Nevada Revised Statutes § 597.995 expresses a "fundamental" Nevada policy is undercut by the

     Nevada Supreme Court's recent holding that the Federal Arbitration Act. preempts § 597.995.

23    MMAWC, LLC v. Zion Wood Obi Wan Trust, 448 P.3d 568, 571 (2019).

24         However, the Court finds that while Nev. Rev. Stat. § 597.995 does not directly apply to

25    the SRA, the statute demonstrates that Nevada has expressions in public policy about the

26    arbitration of disputes. Nev. Rev. Stat. § 338.150 is also not directly applicable here because it

27    applies to public works and planning. Yet, it further demonstrates that Nevada has an interest in

     the arbitration of disputes within its courts. While the application of Nevada statutes in certain

28    cases may be found to be preempted by federal law, the Court does not find that this dilutes

Nevada's public policy interests about the use of arbitration in its courts.

Nevada additionally has a significant public policy interest in protecting its manufacturers, sales representatives, and enforcing its contract laws in this case which involve several different states. Under the SRA, Minnesota was one of eleven states into which Catalina's products, manufactured in Nevada, were to flow from. Presumably, there were to be sales representatives about to operate in all those states, as well.

Minn. Stat. §325E.37, subd. 6 provides the scope of the statute, in relevant part:

**Subd. 6. Scope; limitations.**

(a) This section applies to a sales representative who, during some part of the period of the sales representative agreement:
> (1) is a resident of Minnesota or maintains that person's principal place of business in Minnesota; or
> (2) whose geographical territory specified in the sales representative agreement includes part or all of Minnesota.
(b) To be effective, any demand for arbitration under subdivision 5 must be made in writing and delivered to the principal on or before one year after the effective date of the termination of the agreement.

GGR states that the MTSRA, "does not dictate how a Minnesota representative must operate in a particular state" and that it "limits the circumstances under which a Minnesota-based sales representative's agreement can be terminated, and it protects those rights by specifically prohibiting the application of another state's laws and the waiver, 'by any means' of the MTSRA's protections." ECF No. 43 in "01164" at 6. However, the Court is unclear why and how the MTSRA applies to those not within its scope but nonetheless is covered by the SRA. While Minnesota has some interest in enforcing its policies as expressed in the MTSRA, it is negated by the parties' express choice of Nevada law and the interests of the ten other states where the SRA was to be performed.

The Court also finds that applying Nevada law in this case does not constitute a waiver of the right to arbitrate. The SRA and Consulting Agreement both state, "The parties hereby irrevocably submit to the exclusive jurisdiction of the courts of the State of Nevada and any United States District Court situated in the State of Nevada for the purpose of construing and enforcing this Agreement, unless the parties otherwise agree in writing to another form of dispute resolution," which leaves open the opportunity to choose arbitration. ECF No.1-1 in "00164" at Id. at 35, 40-41.

Minn. Stat. §325E.37, subd. 5 states in part:

**Subd. 5. Arbitration.**

(a) The sole remedy for a manufacturer, wholesaler, assembler, or importer who alleges a violation of any provision of this section is to submit the matter to arbitration. A sales representative may also submit a matter to arbitration, or in the alternative, at the sales representative's option prior to the arbitration hearing, the sales representative may bring the sales representative's claims in a court of law, and in that event the claims of all parties must be resolved in that forum.

Other than the sales representatives choosing between arbitration or litigation under the MTSRA, GGR has not demonstrated sufficient evidence that there are other notable parts of the MTSRA that would require Minnesota law and arbitration to be compelled in his case, especially when the MTSRA is silent to forum-selection clauses or venue. Additionally, GGR's demand for arbitration raises multiple claims, such as claims for violation of the MTSRA, breach of contract, intentional misrepresentation, and declaratory judgment. ECF No. 14 in "01164." Albeit some mention of it in its (ECF No. 40 in "01164") Motion to Stay, GGR does not fully establish that the dispute against Catalina is arbitrable, in whole or in part.

GGR argues that Catalina is subject to mandatory arbitration because SRA's choice-of-law clause is void and unenforceable because it limits the judicial forum, and the MSTRA confers a nonwaivable right on GGR to choose arbitration.

Minn. Stat. §325E.37, subd. 7 states:

**Subd. 7. Prohibition of inclusion of certain unfair contract terms in a sales representative agreement.**

(a) No manufacturer, wholesaler, assembler, or importer shall circumvent compliance with this section by including in a sales representative agreement a term or provision, whether express or implied, that includes or purports to include:
      (1) an application or choice of law of any other state; or
      (2) a waiver of any provision of this section.
(b) Any term or provision described in paragraph (a) is void and unenforceable.

The Court finds that the MTSRA does not apply here. At the time of the agreement, parties had legal and business experience. The Court finds the parties agreed to the application of Nevada law in the SRA with the full understanding of the provision of Minnesota law that could have applied and been incorporated into the agreement but were not. Nevada also has a substantial relationship with the transaction of the SRA and has substantial public policy interests at stake.

- 5 -

1   Therefore, Minnesota law and the MTSRA, does not invalidate the parties' choice-of-law clause

2   in this case.

3          Finally, because the Court finds that Nevada law applies, the Court declines to rule on

4   whether the SRA constitutes a "sales representative agreement" as defined by the MTSRA and

5   whether the forum selection clause is void and unenforceable.

6                        **C.  Motion to Stay**

7          Concurrently with its Motion to Compel Arbitration, GGR filed a motion to stay any

8   remaining proceedings in this Court pending arbitration of its MTSRA and breach of contract

9   claims. ECF No. 40 in "01164." GGR states that: (1) The MTSRA and breach of contract claims

10  are subject to arbitration; (2) Catalina's declaratory judgment action is not severable; (3) GGR's

11  claim for declaratory judgment relating to the Consulting Agreement is severable, not subject to

12  arbitration and should be stayed; and (4) should the Court order arbitration of GGR's MTSRA and

13  breach of contract claims, that Mr. Hanzal will stipulate to a dismissal without prejudice of his

14  intentional misrepresentation claim. Id.

15         In its reply, Catalina argues that for the reasons stated in its response to GGR's Motion to

16  Compel Arbitration, the Court should deny GGR's motion to compel arbitration with prejudice,

17  and as result, deny GGR's motion to stay as moot. ECF No. 43. In response, GGR states that GGR

18  established its nonwaivable right to arbitration under the MTSRA, and that the MTSRA mandates

19  that Catalina arbitrate its termination of SRA because Catalina has "good cause" in the declaratory

20  judgment action. Therefore, under the Uniform Arbitration Act, there should be a stay of any

21  claims not subject to arbitration. ECF No. 44.

22         For the reasons discussed above, the Court finds that Minnesota law, and therefore the

23  MTSRA does not apply to the SRA dispute. By denying the (ECF No. 30) Motion to Compel

24  Arbitration, there is currently no reason to stay the adjudication of any claims in this case.

25  . . .

26  . . .

27  . . .

28  . . .

1

**IV. CONCLUSION**

2      **IT IS HEREBY ORDERED** that Catalina's Motion to Remand to State Court (ECF No.

3   28) is DENIED.

4      **IT IS FURTHER ORDERED** that GGR's Motion to Compel Arbitration (ECF No. 30)

5   is DENIED.

6      **IT IS FURTHER ORDERED** that given the ruling in [ECF No. 30], GGR's Motion to

7   Stay (ECF No. 31) is DENIED as moot.

8

9      DATED: March 10, 2021

10   _____

11   **RICHARD F. BOULWARE, II**
     **UNITED STATES DISTRICT JUDGE**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 5 -